## In re THOMPSON. *

## SCRUGHAM v. FORESTGLEN LAND CO.

(Circuit Court of Appeals, Third Circuit. March 6, 1924. Rehearing Denied
April 8, 1924.)

### No. 3057.

1. **Bankruptcy ⬤⟹267—Bankruptcy trustees held to have acted in good faith in distributing proceeds of sale.**

Failure of trustees in bankruptcy to include name of assignee of lien in their petition for reference of compromise agreement *held* accidental, and the distribution of the proceeds of sale of the property free of liens under order of court made in good faith.

2. **Bankruptcy ⬤⟹267—Duty of assignee of lien to appear at creditors' meetings to protect own rights.**

Where corporate assignee of a lien against bankrupt's property failed to appear at a creditors' meeting to consider sale of bankrupt's property free of liens, though it had notice thereof, and thereafter by mistake its name was not included in trustees' petition for reference of a compromise agreement, or in the schedule of distribution, and trustees erroneously paid the amount of such lien to assignor and a subsequent assignee, *held*, that it was assignee's duty to appear and protect its own interests, and it was precluded from asserting its claim against trustees.

3. **Equity ⬤⟹67—Equity courts refuse to aid person who sleeps on rights without excuse.**

Courts of equity uniformly refuse to assist a person who has slept on his rights, and who shows no excuse for his laches in asserting them.

Appeal from the District Court of the United States for the Western District of Pennsylvania; W. H. S. Thomson, Judge.

Suit by the Forestglen Land Company against George R. Scrugham and others, trustees of the estate of Josiah Vankirk Thompson, bankrupt. Decree for plaintiff, and defendants appeal. Reversed, and new trial awarded.

See, also, 288 Fed. 385.

R. E. Umbel, of Uniontown, Pa., Waitman H. Conaway, of Fairmont, W. Va., and Weil, Christy & Weil, of Pittsburgh, Pa. (A. Leo Weil and J. Smith Christy, both of Pittsburgh, Pa., of counsel), for appellants.

Jesse T. Lazear, of Pittsburgh, Pa., for appellee.

Before BUFFINGTON, WOOLLEY, and DAVIS, Circuit Judges.

DAVIS, Circuit Judge. This is an appeal from a decree of the District Court ordering George R. Scrugham, David M. Herzog, and Rolfe M. Hite, trustees of the bankrupt estate of Josiah V. Thompson, to pay to the Forestglen Land Company, the sum of $31,426.03, with interest from November 1, 1920. In 1917 the circuit court of Ohio county, W. Va., decreed that William T. George, Esq, was the holder of a lien which was liquidated at $35,522.41 on the land of J. V. Thompson, in that county. In the same year Thompson was adjudicated a bankrupt. In the following year George assigned to the land company the lien as collateral security to a note for $30,000.

---

It was provided in the assignment that the land company was entitled to any moneys paid on account of the lien to the extent necessary to pay the debt, and when it had been paid and satisfied from any source the interest of the land company ceased.

On June 13, 1919, the trustees entered into an agreement, subject to the approval of the court, with the Piedmont Coal Company, to sell to it the balance of the land of the bankrupt estate in Pennsylvania and West Virginia, including the land to which the George lien attached, free and discharged of liens. The matter was referred to Referee J. G. Carrol, of Uniontown, Pa. Pursuant to an order of the court made on June 23, 1919, a meeting of creditors of the bankrupt was called by him for July 14, 1919, to act upon the approval or disapproval of the agreement of sale. The land company received and acknowledged notice, but did not appear. The proceedings were subsequently transferred to Referee Blair. On September 18, 1919, the trustees filed a petition for authority to make the sale with Referee Blair, who called a creditors' meeting for November 10, 1919. After a full hearing, he made an order on November 24, 1919, authorizing the sale. The trustees sold the property and made return of sale the following day. Thereafter certain exceptions to the confirmation were filed, and while they were pending the trustees on February 6, 1920, presented their petition to the court, reciting that certain judgment creditors in West Virginia claimed judgment liens which were obtained in the state court, on the property in that state, and challenged the jurisdiction of the United States District Court in Pennsylvania.

This petition purported to contain the names of all the creditors who had liens and who would participate in the distribution of the proceeds of the sale of the property. Attached to the petition and forming a part of it was a proposed schedule of distribution. The petition prayed that the matter be referred to Referee Blair. The court granted the prayer and directed him to call a meeting of the creditors forthwith for the purpose of considering the agreement of compromise and settlement of the questions raised in the petition and to report as soon as practicable his action approving or disapproving the agreement and schedule of distribution. The court also directed the referee to give written or printed notice to all lien creditors whose liens were to be discharged and divested, who might be found after diligent search, and to notify all others, who could not be found, by publication. The name of the land company did not appear as a lien creditor in the petition of the trustees of February 6, 1920, nor in the schedule of distribution, and so the referee did not send to it a notice of the creditors' meeting which he called on February 21, 1920. On March 1st the referee made his report, wherein he recited that due notice had been given to the creditors, and that all attachment and judgment creditors of West Virginia, with the exception of four, whose names were therein mentioned, which did not include the land company, had signed the agreement of compromise. With his report the referee submitted an order for confirmation of the return of the sale by the trustees and an amended schedule of distribution. The court confirmed the sale on the same day. The schedule awarded to William T. George

$19,725.65, and to the Kanawha Valley Bank $17,296.35. The assignment of George to the bank was subsequent and secondary to the assignment to the land company. These amounts were paid by the Piedmont Coal Company by two checks, one for each amount. They were drawn to the order of the trustees, and were indorsed by them to George and the bank, and thereafter countersigned by the referee.

There is no question about the fact that the payments made to George and the bank were erroneous and should have been made to the land company to the extent of satisfying its note. These erroneous payments doubtless resulted in whole or in part from many facts: The clerks of courts and recorders in West Virginia, unlike such officials in Pennsylvania, do not have power to certify liens. In order to procure an authenticated list of liens held on the West Virginia property, Bernard N. Butcher was appointed ancillary referee, to ascertain and to certify to the United States District Court for the Western District of Pennsylvania the liens and attachments affecting the West Virginia property. Mr. Butcher died, and Mr. William J. Snee was appointed his successor. Mr. Snee made and filed four reports in the United States District Court for the Northern District of West Virginia, which was the ancillary jurisdiction. That court certified these reports to the federal court in Pittsburgh, which in turn referred them to Referee Blair. The fourth report purports to be a summary of the other three, and was filed in the District Court for the Western District of Pennsylvania on October 30, 1919. This report did not show the lien held by the land company, while the first report did.

Another fact contributing to the mistake was that the land company, which was in court in the early part of these proceedings, did not appear in response to the notice of the meeting of July 14, 1919; nor did it appear at any time thereafter until the money had been distributed. Again, as above stated, the petition of the trustees of February 6, 1920, did not contain the name of the land company as a lien creditor. Referee Blair, who was charged by the court with the duty of notifying all lien creditors whose liens would be discharged by the sale of the property, doubtless relied on the fourth report of Mr. Snee and the list of lien creditors submitted by the trustees. This largely accounts for his failure to notify the land company of meetings and include its name in the amended schedule of distribution. George's testimony that the note had been paid and the debt satisfied confirmed him in the belief that his amended schedule was correct. At the creditors' meeting at which George testified, the referee stated that John W. Brown and the National Bank of West Virginia had not signed the agreement, and asked if there were any others, and was told that there were "no others." The court also was of the opinion that notice had been given to all lien creditors, for in confirming the sale it was decreed:

"That due, legal, and timely notice to all creditors, lien and others, of all the proceedings before the referee, above recited, have been given in accordance with the bankruptcy laws of the United States and the rules of the Supreme Court of the United States."

The decree further provided that within 30 days after it was affirmed, if no appeal was taken, the trustees should convey the proper-

ty to the Piedmont Coal Company and contemporaneously therewith pay the sums of money provided in the schedule of distribution to the respective creditors named in the schedule.

[1, 2] The land company charges that the erroneous payments were due to the failure of the trustees to include its name as a lien creditor in the petition for reference of the compromise agreement to Referee Blair, and contends that they are therefore liable. This failure was either accidental or intentional. If intentional, it was a fraud, and the trustees are liable. No motive for fraud was shown. It was neither alleged nor proved. The omission, therefore, was an oversight or an honest mistake. Either is plausible. The trustees had thousands of claims to look after, and it might well be that one claim or lien to which the claimant or lienor paid little or no attention might escape their notice.

As between the trustees and the appellee, the equities are with the trustees. A. Leo Weil, Esq., of counsel for the trustees, wrote the president and counsel of the land company that the payment of $1,000,-000 for the West Virginia property "would substantially pay in full all the uncontested claims," but added:

"This, of course, is only my personal opinion, based upon such information as I have been able to secure, and is not intended as any representation upon which you have the right to rely, so as to affect your action in the premises."

[3] This was, in effect, notice that it should look out for its own interest. As a matter of fact the land company had actual knowledge of the proceedings generally. Before the sale was confirmed, George had testified that the debt of the land company had been paid. If it had appeared on February 21, 1920, or at any time thereafter before the money was distributed, George's fraud would have been prevented. Its failure to appear tended to confirm the truth of George's testimony. It was reasonable to believe that the debt had been paid, and in our opinion the trustees distributed the money in accordance with the order of the court in good faith. If the land company is compelled to suffer loss, it is primarily its own fault. It was not only its right, but its duty, to appear to protect its own interest at these meetings, where large amounts, many claims, and serious complications were involved. But it neglected its duty and slept on its rights. Courts of equity uniformly refuse to assist a person who has slept on his rights and shows no excuse for his laches in asserting them. Speidel v. Henrici, 120 U. S. 377, 387, 7 Sup. Ct. 610, 30 L. Ed. 718; Hammond v. Hopkins, 143 U. S. 224, 250, 12 Sup. Ct. 418, 36 L. Ed. 134.

The decree of the District Court is reversed, and a new trial awarded.

BUFFINGTON, Circuit Judge, did not take part in the consideration or decision of this case.